# In the
# United States Court of Appeals
## For the Seventh Circuit



CERTIFIED COPY

No. 15-2830

MICHAEL N. THOMAS,

    *Plaintiff-Appellant*,

v.

RAYMOND ANDERSON, et al.,

    *Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-C-1343 — **Joe Billy McDade**, *Judge*.

ARGUED FEBRUARY 7, 2018 — DECIDED NOVEMBER 14, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Michael Thomas, an Illinois prisoner formerly confined at Hill Correctional Center, alleged that prison guards attacked him with excessive force and that the beating and subsequent disciplinary proceedings were in retaliation for lawsuits and grievances he filed. He sued the guards and other prison officials seeking damages under 42 U.S.C. § 1983. In the course of pretrial proceedings, the district judge required the parties to stipulate to the events

preceding the attack and ruled that certain inmate witnesses must appear, if at all, by video conference. The judge also declined Thomas's request for recruited counsel, determining that he was competent to litigate the suit pro se. At trial the judge entered judgment as a matter of law for the defendants on all claims except those asserting excessive force by two officers. The jury decided those claims against Thomas.

On appeal Thomas contests the judge's evidentiary rulings, the decision not to recruit counsel, and the partial judgment for the defendants as a matter of law. Because Thomas's trial testimony allowed for a permissible inference of retaliation, the judge should not have taken the retaliation claims from the jury. We reverse the judgment on those claims. In all other respects, we affirm.

## I. Background

Thomas's lawsuit centers on an altercation that occurred on March 24, 2011, at Hill Correctional. Thomas alleged that two prison guards, Raymond Anderson and Richard Cochran, attacked him and that a third guard, Roger Fitchpatrick, failed to intervene to stop the attack, all in violation of his rights under the Eighth Amendment. He also claimed that the officers violated the First Amendment by retaliating against him for his past grievances and lawsuits: Anderson, Cochran, and Fitchpatrick by assaulting him (or failing to intervene); Anderson and Cochran by issuing phony disciplinary charges after the attack; and two hearing officers, Cornealious Sanders and Scott Bailey, by finding him guilty of the charges knowing that they were baseless.

At trial Thomas testified to his version of the events on March 24 and the disciplinary proceeding that followed. He testified that on the morning of March 24, he was showering before the morning lockup when Officers Anderson, Cochran, and Fitchpatrick saw him and signaled—seven or eight minutes early—that all inmates must immediately return to their cells. Thomas hurried, still soapy and partially undressed, to return to his cell. Cochran slammed the cell door shut before Thomas could enter, but the door bounced open and he managed to slip inside. Anderson, Cochran, and Fitchpatrick followed, and Anderson told Cochran to "write that MF'er a ticket" for refusing to enter his cell after the lockup signal. When Thomas protested, Cochran cornered him, cursing and screaming. Anderson then rebuked Thomas, saying, "You should have thought about that before you made all of [your] complaints about me and filing grievances about me in the prison." Thomas had previously filed grievances complaining that Anderson had (among other things) threatened to retaliate against him for notifying prison administrators, legislators, and government officials of problems at Hill, including safety and sanitation. Cochran told him that he "didn't like inmates who tried to get staff in trouble."

Thomas testified that after the officers entered his cell, Cochran handcuffed him and Fitchpatrick ordered his cellmate to leave. Anderson then directed Cochran to teach Thomas how to keep his "mouth closed and to not make the staff upset." Cochran pushed Thomas to the ground and punched him while a second guard "yanked" him. Thomas told the jury that this second guard must have been Anderson because he could see Fitchpatrick standing back "egging them on." The three guards then pulled Thomas

from his cell and threw him against the corridor walls before sending him to the segregation unit.

The defendants disputed Thomas's version of events, denying that they used excessive force against him. Anderson and Cochran testified that Thomas resisted the lockup and shouted racial epithets. Cochran acknowledged that he handcuffed Thomas but denied using excessive force in doing so. Fitchpatrick echoed that Thomas had been shouting and swearing, and he too denied that Cochran used undue force. Anderson testified that he told Fitchpatrick that he did not want anything to do with Thomas because of his previous grievances against him. Fitchpatrick admitted knowing that Thomas had filed grievances against Anderson; Cochran testified that he did not know about the grievances.

Disciplinary proceedings against Thomas followed this incident. Cochran wrote Thomas up for resisting the lockup, making threats, being insolent, and disobeying a direct order. Officers Bailey and Sanders conducted the disciplinary hearing on these charges; the parties disagree about what happened. According to Thomas, Bailey and Sanders told him that "their hands were tied" and they "couldn't" exonerate him. He testified that Sanders mentioned that he was about to retire and did not want trouble, and Bailey said that Thomas "shouldn't have been making complaints about the prison" if he did not want "to be in a situation like" this one. Sanders denied saying that he found Thomas guilty because his "hands were tied" or that Thomas should not file grievances. Likewise, Bailey denied warning Thomas against complaining about prison employees. Thomas was found guilty of the rules violations and received a month in segre-

No. 15-2830 5

gation and then spent three months assigned to C grade, a more restrictive confinement.

The judge restricted the scope of the trial in several ways that are relevant to this appeal. In lieu of admitting voluminous evidence of Thomas's prior grievances, the judge required the parties to stipulate that Thomas had filed numerous grievances against Anderson and others, and that he also had sued Anderson. Over Thomas's objection, the judge also refused to permit testimony about events before March 24. The judge barred the testimony of two of Thomas's proffered inmate witnesses, Kiante Simmons and Xavier Landers, who were no longer in state prison. Thomas thought that they might be incarcerated elsewhere—perhaps the Cook County Jail and an unnamed federal facility, respectively—but this supposition was just speculation. In any event, even assuming that they *were* in custody somewhere else, the judge was only willing to permit them to testify via video conference; he would not order them produced for in-person testimony.

Early on in the case, the judge had denied Thomas's several requests for recruited pro bono counsel. Closer to trial, the judge did not rule on Thomas's requests to reconsider those earlier decisions. Finally, at the close of the evidence, the judge took several claims from the jury, granting the defendants' motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. In the end the jury was asked to decide only if Anderson and Cochran had used excessive force and, if so, whether Anderson had been motivated to do so by a desire to retaliate for Thomas's

lawsuits and grievances. On these claims the jury returned a verdict for Anderson and Cochran. This appeal followed.[1]

## II. Analysis

We begin with Thomas's argument that the judge was wrong to grant the defendants' Rule 50 motion on two claims: that Anderson and Cochran retaliated against him by issuing a phony disciplinary report and that Sanders and Bailey retaliated against him by conducting a sham disciplinary hearing. Judgment as a matter of law is justified only if after a full hearing there is no "legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1); *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006). Because the judge overlooked testimony supporting Thomas's position and failed to view evidence in the light most favorable to him, we reverse the judgment on these claims.

As to Anderson, the judge explained that "the only evidence relating to any retaliation" was Anderson telling Fitchpatrick that he did not want anything to do with Thomas because of his previous grievances. But Thomas's account of the encounter provided an evidentiary basis from which a reasonable jury could infer retaliatory motive. Thomas testified that (1) Anderson called for an early lockup after seeing him in the shower; (2) Anderson told Cochran to write Thomas a ticket for refusing to lock up, even though Thomas did not refuse; and (3) when Thomas protested that

---

[1] We sua sponte recruited pro bono counsel for Thomas on appeal. Barry Levenstam, Remi J.D. Jaffre, and Jenner & Block LLP, accepted the appointment. They have ably discharged their duties. We thank them for their service to their client and the court.

No. 15-2830 7

the ticket was baseless, Anderson scoffed: "You should have thought about that before you made all of [your] complaints about me and filing grievances about me in the prison." It was for the jury to decide which account to believe. *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (noting that in assessing a Rule 50 motion, "[t]he court does not make credibility determinations or weigh the evidence"); *Lopez*, 464 F.3d at 720 (same). A jury could reasonably conclude from Thomas's version that Anderson orchestrated Thomas's "late" return to his cell to trump up a false disciplinary charge in retaliation for Thomas's past complaints.

We reach a similar conclusion about Cochran. The judge granted the Rule 50 motion on the retaliation claim against him because he thought that there was no evidence that Cochran knew of Thomas's litigation. But Thomas testified that Cochran was in the cell when Anderson told Thomas that he should not have filed grievances and that Cochran himself said that he "didn't like inmates who tried to get staff in trouble." A jury could reasonably infer based on these statements that Cochran helped call for an early lockup before Thomas finished showering as revenge for Thomas's grievances and lawsuits. *See Gevas v. McLaughlin*, 798 F.3d 475, 477 (7th Cir. 2015) (assessing a Rule 50 motion requires the court "to assume the truth of" the testimony of the nonmoving party).

Finally, the jury should have been permitted to decide whether Bailey and Sanders held a hearing that they knew was a sham for the purpose of retaliating against Thomas. The judge entered judgment in their favor on this claim because again he thought no evidence showed that these defendants knew of Thomas's past grievances. But retaliato-

ry motive can be inferred from Thomas's account of the hearing. *See id.* at 477, 481–82. Thomas testified that Bailey told him that he "shouldn't have been making complaints about the prison" if he didn't "want to be in [this] situation" and that his "hands were tied." And he testified further that Sanders agreed that his "hands were tied" and expressed concern that conducting a fair hearing could interfere with his retirement.

Bailey and Sanders respond that Thomas's testimony suggests only that they were motivated by personal concerns, not by Thomas's First Amendment activity. But a retaliation claim only requires evidence that the plaintiff's protected activity was "at least *a* motivating factor" for the retaliatory action. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (emphasis added) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Thomas's testimony, if a jury finds it credible, could support an inference that retaliation for his past grievances was a motivating factor in their decision. Viewed as a whole, there was sufficient evidence to present this claim to the jury.

### A. Events Before March 24, 2011

Thomas also contests the judge's decision to bar testimony about events before March 24, 2011, and instead require the parties to stipulate that Thomas had filed grievances against Anderson and other prison officials. Thomas proposed to introduce at trial more than 150 complaints and grievances he had filed. The judge ruled that admitting that number of grievances could confuse the issues, prolong the trial, and possibly prejudice the jurors. And apart from concerns about the quantity, the judge worried that jurors

would be tempted to assess whether the grievances were true.

Thomas contends that this restriction disabled him from showing that his grievances actually motivated Anderson to retaliate against him. He argues that he could have used evidence from before March 24 to show that Anderson had threatened to issue "bogus disciplinary reports" and physically harm him if he did not stop filing grievances. In place of this evidence, Thomas says, the stipulation informed the jury only that he had engaged in constitutionally protected activity.

That is not an accurate characterization of the stipulation. The stipulation informed the jury in general terms of Thomas's grievance and complaints about prison conditions. It also explained that Thomas had accused Anderson of "locking prisoners up in their cells earlier than the allowable time, making racial comments to inmates and threatening inmates, including plaintiff, with punishment for making complaints about [Anderson]." That was enough to convey to the jury the basic background facts pertaining to the alleged retaliatory motive.

Moreover, the judge was understandably concerned that permitting Thomas to introduce the entire record of his prior grievances would bog down the proceedings and distract and potentially confuse the jurors. To avoid those risks, the judge reasonably concluded that the stipulation was an appropriate substitute for this evidence. *See Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 307 (7th Cir. 2011). That ruling was well within the judge's authority to manage the efficiency of the trial by streamlining Thomas's voluminous proposed evidence. *See Whitfield*

10                                                            No. 15-2830

*v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). We see no abuse of discretion.

**B. Exclusion of Kiante Simmons and Xavier Landers**

Thomas also challenges the judge's decision to exclude the testimony of two inmate witnesses, Kiante Simmons and Xavier Landers. In both instances the judge stated that the witnesses must testify, if at all, using video-conferencing technology. Because Thomas did not produce video-conference addresses for Simmons and Landers, they did not testify.

First, to the extent that either witness would have testified about events before March 24, 2011, their exclusion was harmless because the judge's earlier ruling foreclosed that evidence. And contrary to Thomas's argument on appeal, the judge was not required to apply the balancing test outlined in *Stone v. Morris*, 546 F.2d 730 (7th Cir. 1976). *Stone* applies when a district judge must decide whether a "plaintiff-prisoner in a civil rights suit" should be brought to court for trial. We explained that the judge should weigh the logistical difficulties of transporting the plaintiff-prisoner against the prisoner's interest in testifying in person and examining the witnesses face-to-face. *Id.* at 735–36.

*Stone* has not been extended to nonplaintiff inmate witnesses, and we decline to do so now. As we've explained more recently, forcing a prisoner-plaintiff to try his case remotely by video conferencing raises special challenges—e.g., the inability of the prisoner-plaintiff to see jurors' faces, the difficulty in examining and evaluating witnesses, and the complications associated with communicating with the court and opposing counsel. *See Perotti v. Quinones*, 790 F.3d 712,

No. 15-2830 11

725 (7th Cir. 2015). Those concerns do not affect a nonplaintiff inmate testifying as a witness.

Instead, Rule 43(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2241(c)(5) govern this question. The latter permits the court to issue a writ of habeas corpus when "[i]t is necessary to bring [a prisoner] to court to testify or for trial." § 2241(c)(5). And under Rule 43(a), the judge has discretion to allow live testimony by video for "good cause in compelling circumstances and with appropriate safeguards." *Thornton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005) ("Rule 43 affirmatively allows for testimony by videoconference in certain circumstances … .").

Here, another inmate witness testified to the same information that Thomas says he wanted to cover with Simmons and Landers. The judge determined that Thomas's interest in their testimony was outweighed by the expense and inconvenience of transporting them for trial (assuming they could be located and were in fact in custody). That was well within his discretion.

Moreover, Thomas has not come close to establishing that he was prejudiced by the absence of their testimony. *See Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1039, 1042–43 (7th Cir. 2000) (explaining that the party challenging the exclusion of the evidence must record the grounds for admissibility, content, and significance of the excluded testimony). Thomas suggests that Simmons and Landers would have recalled the March 24 altercation better than the inmate who testified in support of his story. But he has no evidence to back up that assertion.

### C. Recruitment of Counsel

Finally, Thomas argues that the judge abused his discretion by declining to recruit counsel to represent him. We disagree. Thomas filed two requests for counsel in February 2014 and February 2015. But neither request showed that he tried to obtain counsel on his own or that he was precluded from doing so. So the judge's denial of these requests was not an abuse of discretion. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc); *see Romanelli v. Suliene*, 615 F.3d 847, 851–52 (7th Cir. 2010) (explaining that the denial of a motion to recruit counsel was justified by the district court's finding that the plaintiff had not tried to obtain counsel). And the judge did not limit his decision to that particular defect; he also ruled that Thomas was competent to litigate his own case.

Before trial, Thomas twice more asked that the judge "reconsider appointing counsel." Although these requests cured the technical defect in the earlier ones—Thomas specifically stated that he had tried unsuccessfully to find counsel—the judge did not rule on them. But once a judge appropriately addresses and resolves a request for recruitment of pro bono counsel, he need not revisit the question. *Pruitt*, 503 F.3d at 658; *cf. Childress v. Walker*, 787 F.3d 433, 442–43 (7th Cir. 2015) (finding that it was an abuse of discretion to act on neither of the plaintiff's requests for counsel); *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657–59 (7th Cir. 2014) (finding that it was an abuse to deny the initial motions for counsel without explaining the reasoning and then to ignore subsequent requests). We find no error.

### III. Conclusion

Accordingly, the judgment is REVERSED, and the case is REMANDED for further proceedings on the retaliation claims against Anderson, Cochran, Sanders, and Bailey. In all other respects, the judgment is AFFIRMED.